UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                          :
AFFILIATED FM INSURANCE CO.,              :
                                          :
                    Plaintiff,            :      14 Civ. 6938
                                          :
         - against -                      :      **OPINION**
                                          :
                                          :
BRIDGE TERMINAL TRANSPORT                 :
SERVICES, INC.,                           :
                                          :
                    Defendant.            :
                                          :
                                          :
------------------------------------------x

      Before the court is a motion to compel arbitration in a contract dispute.  The dispute concerns allegations by plaintiff Affiliated FM Insurance Company ("Affiliated FM") that defendant Maersk Trucking Holdings, Inc., f/k/a Bridge Terminal Transport, Inc. ("BTT") failed to meet its obligations as carrier of certain shipments.  BTT argues that Affiliated FM must submit its claims to binding arbitration.  Affiliated FM opposes, and makes a cross motion to strike BTT's affirmative defense that the claims in this case are subject to binding arbitration.

      BTT's motion to compel arbitration is granted.  Affiliated FM's cross-motion to strike is denied.

### The Complaint and the Present Motion

      During February and April of 2013, BTT agreed to transport certain containers of children's clothing from Huntsville, Alabama to Fort

Payne, Alabama.  In this capacity BTT was a motor carrier for Affiliated FM's subrogor, The Children's Place Services Company, LLC ("TCP").  Unfortunately, when the containers arrived at their destination, the seals on the containers had been broken and their contents mostly pilfered.

The complaint, dated August 26, 2014, alleges that BTT (1) failed to perform its contractual obligations, (2) acted negligently or recklessly, (3) and breached its bailment duties, all resulting in a loss of $300,000.

On October 30, 2014, BTT requested in writing that Affiliated FM submit its claims to binding arbitration.  Affiliated FM refused.  BTT filed the present motion to compel arbitration on November 13, 2014.  BTT seeks an order (1) compelling Affiliated FM to submit its claims to arbitration, (2) appointing an arbitrator, and (3) staying this action pending arbitration.

## The Arbitration Provision

Prior to the pilfered shipments, TCP contracted with BTT for at least ten other shipments.  These were received between October 2, 2012 and June 24, 2013.  Upon delivery of these shipments, TCP received delivery receipts from BTT.  Each delivery receipt contained the following language:

> BTT's services are subject to the terms, conditions and limitations of liability stated in BTT's Rules Tariff that are available upon request from BTT, or at http://bttinc.com.

BTT produces copies of these receipts as an attachment to an affidavit in support of this motion.

BTT also produces a copy of the Rules Tariff referenced in those receipts.  BTT avows that this Rules Tariff was available on its website from October 2012 to June 2013.  The Rules Tariff contains the following provision:

> **Arbitration** Any and all disputes not resolved between Bridge Terminal Transport, Inc. and Customer will be resolved at binding arbitration, before a recognized arbitration board to be jointly selected by Customer and the Bridge Terminal Transport, Inc.  The arbitration shall be held within thirty (30) days of notification from Customer to the Bridge Terminal Transport, Inc. of the need for arbitration.  The arbitration will be conducted in a location mutually agreed to by the Bridge Terminal Transport, Inc. and Customer.  Each party will bear its own costs of the arbitration and costs of arbitration board will be equally split.

**Discussion**

The Federal Arbitration Act provides that, if an agreement to arbitrate applies to a dispute, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  If a party to such an agreement refuses to arbitrate, the court is to order arbitration. Id. at § 4.  And where the arbitration agreement does not provide a method of selecting an arbitrator, the court is to appoint one.  Id. at § 5.  Further, it is well established that the Federal Arbitration Act strongly encourages arbitration and that agreements to arbitrate must be interpreted liberally, in favor of arbitration.  See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

3

### *Whether the Parties Agreed to Arbitrate*

A threshold question in this dispute is whether the parties entered into an agreement to arbitrate. Affiliated FM contends that the arbitration provision in BTT's Rules Tariff is not part of a contract between the parties for two principal reasons. First, the delivery receipts referencing the Rules Tariff were only given to TCP on receipt of shipments, not before the shipments. Second, even if the receipts were part of a contract, they did not successfully incorporate the Rules Tariff into the contract by reference. BTT replies that the delivery receipts comprise part of a contract because they were issued as part of a course of dealings between BTT and TCP, and that the receipts properly incorporated the Rules Tariff.

As a matter of state contract law, terms repeatedly included in written confirmations between two parties can become part of subsequent contracts between the same parties. See Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92, 101. See also Pervel Indus. v. T M Wallcovering, Inc., 871 F.2d 7-8 (2d Cir. 1989). The latter opinion states that "[where] a manufacturer has a well-established custom of sending purchase order confirmations containing an arbitration clause, a buyer who has made numerous purchases over a period of time, receiving in each instance a standard confirmation form which it either signed and returned or retained without objection, is bound by the arbitration provision." Here, TCP assented to as many as

4

ten delivery receipts prior to the disputed shipment.  TCP was surely aware that the receipts contained such terms.  The language in those receipts undoubtedly became part of a contract between BTT and TCP through a course of dealings.

The next question is whether the language in the receipts successfully incorporated BTT's Rules Tariff and its arbitration provision into the agreement.  Two conditions must be satisfied to incorporate a document into an agreement by reference.  First, the document must be specifically referenced and identified beyond reasonable doubt in the agreement, and second, it must be clear that the parties had knowledge of and assented to the incorporated terms.  Ryan, Beck & Co., LLC. V. Fakih, 268 F. Supp. 2d 210, 223 (E.D.N.Y. 2003).  Here, the delivery receipts could hardly have been clearer that receipt of each shipment constituted assent to a separate, specifically-identified document: BTT's Rules Tariff.  The document was identified beyond doubt, and the parties knowingly assented.

Affiliated FM is, furthermore, wrong to suggest that there are special hurdles in incorporating arbitration agreements into contracts by reference.  It is well established in this Circuit that arbitration agreements may be incorporated into contracts by reference.  See Thomson-CSF, S.A. b. Am. Arbitration Ass'n, 64 F.3d 773, 775-777 (2d Cir. 1995); Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 992 F.2d 42, 46 (2d Cir. 1992).  Any stricter state law

5

doctrine specifically impeding the incorporation of arbitration agreements would be preempted by the Federal Arbitration Act.  See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1747 (2011).  And in any case, BTT and TCP are sophisticated merchants who knew the prevalence of arbitration agreements in the shipping industry.

Affiliated FM also argues that further fact discovery is needed concerning whether the Rules Tariff produced by BTT is an authentic document that was actually available at the time of the shipments in this case.  But BTT has already produced the Rules Tariff in two declarations, affirming under penalty of perjury that it is a true copy of the document available on BTT's website from October 2012 to June 2013.  The court finds additional discovery unnecessary.

The court finds that the parties in this case were subject to the arbitration provision in BTT's Rules Tariff and that the claims must be submitted to binding arbitration.

### *Enforceability of the Arbitration Agreement*

Affiliated FM argues that, even if it is bound by the arbitration provision in BTT's Rules Tariff, the provision has several deficiencies that make it unenforceable here.  These arguments are without merit.

First, Affiliated FM argues that the arbitration clause permits only TCP, not BTT, to demand arbitration.  This argument rests upon a sentence in the arbitration provision which reads: "The arbitration shall be held within thirty (30) days of notification from Customer to the

6

Bridge Terminal Transport, Inc. of the need for arbitration." Other language in the arbitration provision, however, makes it plain that arbitration is not solely to be initiated by the customer. Indeed, the first sentence of the provision provides: "Any and all disputes not resolved between Bridge Terminal Transport, Inc. and Customer will be resolved at binding arbitration." "Any and all disputes" can hardly mean that only the customer has a right to initiation arbitration. Affiliated FM's interpretation is therefore implausible.

Second, Affiliated FM argues that the arbitration provision is unenforceable because it is too vague. Specifically, the provision does not set forth certain details such as the number of arbitrators, their qualifications, the scope of their authority, and what law or rules will govern.

However, Affiliated FM points to no legal authority supporting the contention that this lack of specificity renders the agreement unenforceable. The agreement states: "Any and all disputes not resolved between Bridge Terminal Transport, Inc. and Customer will be resolved at binding arbitration, before a recognized arbitration board to be jointly selected by Customer and the Bridge Terminal Transport, Inc." It specifies further that the location of the arbitration shall be mutually agreed and the costs shall be split. The court finds that this is sufficient, and that further issues can be resolved by the arbitrator.

7

### *Appointment of Arbitrator*

BTT moves the court to appoint an arbitrator, observing that the Federal Arbitration Act requires a court to appoint an arbitrator where no method appointment of an arbitrator is provided in an arbitration agreement. However, court appointment is unnecessary at this time because the arbitration agreement provides that the arbitration shall occur before "a recognized arbitration board to be jointly selected by Customer and the Bridge Terminal Transport, Inc." In light of this provision, the parties should commence such joint selection.

### Conclusion

Defendant BTT's motion to compel arbitration and stay the action pending arbitration is granted. The court declines to appoint an arbitrator because the parties have not yet attempted to jointly select one in accordance with the terms of the arbitration agreement. Plaintiff Affiliated FM's cross-motion to strike BTT's third affirmative defense is denied. This resolves the motion listed as number 13 in this case, 14-CV-6938.

Dated: New York, New York
       February 18, 2015

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/18/2015

SO ORDERED

Thomas P. Griesa
U.S.D.J.